No. 10,070.

MANBY v. HIBBARD.

Decided April 3, 1922. Rehearing denied May 1, 1922.

Action for breach of contract. Judgment for defendant.

*Affirmed.*

1. CONTRACT—*Modification.* Record reviewed and held not to establish that there was any binding contract for the modification of an agreement for the purchase and sale of sheep.

2. PRINCIPAL AND AGENT—*Ratification.* The contention that there was any agency and a ratification of the acts of the alleged agent by the principal under the facts of this case, overruled.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Mr. S. HARRISON WHITE, Mr. W. B. MORGAN, for plaintiff in error.

Messrs. JOHNSON & JOHNSON, for defendant in error.

*En banc.*

MR. JUSTICE BAILEY delivered the opinion of the court.

PLAINTIFF, Manby, brought this action for damages on account of an alleged breach of contract by defendant, Hibbard, wherein the latter agreed to purchase from Manby five thousand Utah Sheep. Judgment was for defendant upon a counterclaim for five thousand dollars paid in advance upon the purchase price of the Utah sheep, which Manby had been unable to deliver under the original contract. This judgment is now here for review on error.

The following is a copy of the original contract:

"Contract, Between J. B. Manby and Mart O. Hibbard, March 3, 1920; that for $5,000.00 consideration, received, Manby agrees to sell, and Hibbard to buy 5,000 head of yearling ewes, to average 58 lbs in Southern Utah. Price $12.50 a head. The $5,000.00 to be part of purchase price, and balance on delivery, f. o. b. cars, at Modena, U. between April 5 and 10, 1920, healthy and free from disease, none crippled, locoed or injured. Manby warrants title, free of incumbrance."

The agreement was reached by the parties themselves without outside intervention. It is claimed by plaintiff that subsequently the agreement was modified so as to provide for the sale of Oregon sheep, to be delivered on board cars there. That this modified contract was arranged through an agent and later ratified by Hibbard. However, it seems that Hibbard declined to accept the Oregon sheep, which refusal is the basis of the supposed breach and alleged damages.

It appears that the parties were brought together upon the first contract by one Harry R. Wood, a Denver live stock salesman. When plaintiff was unable, as provided in the original contract, to make delivery of the Utah sheep, he sent this telegram to defendant:

"Denver, Colo., March 31, 1920.

"Mart O. Hibbard,
      "Buffalo, Wyoming.

"Utah parties fell down on yearling ewe deal. I will furnish you two thousand April 15th, f. o. b. Condon, Oregon, and three thousand May 1st, f. o. b. Heppner, Oregon.

These yearling ewes will weigh over sixty-five pounds and shear over eight pounds.

"J. B. Manby."

No answer was ever made thereto by Hibbard. However, on April 9th, Wood, the man who had been instrumental in bringing about the original contract, sent the following telegram to Manby, but upon what authorization does not appear:

"Can we arrange for Hibbard to receive both shipments at once, answer."

Manby replied:

"Hibbard must be here 13th, can't delay this shipment."

Wood responded with the following:

"Hibbard will be there. Arrange to receive second shipment soon as possible. Have you anything that is not sold?"

Later Wood sent the following:

"My man will be in Arlington today for Hibbard sheep."

It appears that Hibbard did send a man to Oregon to receive two thousand of the five thousand Oregon sheep, but owing to the fact that Manby declined to deduct the five thousand dollars paid under the original contract for Utah sheep from the price of the first two thousand Oregon ewes, Hibbard's man refused to accept them. It also appears that Manby did not in fact own any sheep in Oregon, but simply held options, and was dependent upon the money coming from Hibbard to pay the balance of the purchase price therefor, before he could deliver at all.

There are several assignments of error argued, but the matter which is determinative of the case is that the record fails to establish that there was any binding contract on Hibbard for a modification of the original agreement. In this connection it is to be noted that in making the original agreement both parties acted for themselves. Wood was agent for neither, and was without authority to conclude a deal. There is nothing in the telegrams relied upon by Manby which establish agency in Wood, as to the proposed Oregon deal. It is urged, however, that Hibbard by his

subsequent conduct ratified the acts of Wood in this behalf. What Hibbard did was to send his man to Oregon to receive two thousand sheep, if the five thousand dollars originally paid Manby were deducted from the purchase price thereof. Owing to the fact that Manby in reality owned no sheep in Oregon, or elsewhere, for that matter, he could not agree to these terms, and evidently was in no position to carry out the proposed Oregon deal. This is clearly apparent from a careful examination of the whole record. The man sent by Hibbard to Oregon had no authority to do anything except as instructed in writing. These instructions were that he was to receive two thousand sheep, if Manby would deduct the money already paid on the original contract for Utah sheep from the purchase price of the two thousand Oregon sheep. There was no attempt upon the part of Manby, through the Oregon deal, to in effect fulfill the Utah contract. Apparently Hibbard saw a chance to at least recoup part of his losses, through Manby's breach of the first contract by a new arrangement for the Oregon sheep, which proposition Manby quite evidently was never in position to carry out. We conclude this from a full examination of all the record facts.

There is no theory upon which Manby can or ought to recover. Even if Wood was the agent of Hibbard no specific and binding contract by him is shown to have been made for the purchase of the Oregon sheep. However, there is nothing in the record to satisfactorily establish such agency. Upon full consideration it appears that exact justice will only be done when Manby has refunded to Hibbard the $5,000.00 which the latter paid on the original contract, with interest and costs. The judgment is affirmed.

MR. CHIEF JUSTICE SCOTT and MR. JUSTICE BURKE not participating.

MR. JUSTICE DENISON specially concurring.

I do not agree that there was no contract for the pur-

chase of the Oregon sheep; but it was essential to the plaintiff's case that he show himself ready to deliver 2000 sheep f. o. b. Condon, April 15th and his evidence showed he was not. The judgment was therefore right.